dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

# RESIDENTIAL REAL ESTATE SALE CONTRACT

**THIS CONTRACT is made between:** (Print names and **INDICATE MARITAL STATUS OF PARTIES.** If Seller name is not completed, Licensee Assisting Seller to insert Seller name prior to presentation to Seller.)

**SELLER:** Christopher Redmond, BK Trustee for the Estate of Samantha Ruiz

**BUYER:** Elvi Guerra and Wagner Maricio Guerra-Arana (AMC)

☑ **Bank-Owned Property (check if applicable).** If the real property is bank-owned and the titled owner of record is not known at the Effective Date of this Contract, BUYER and SELLER agree the name of the SELLER is amended to as it is stated in the Deed at Closing and is incorporated herein by reference and in any amendments and addenda. SELLER warrants it has full authority to sign and perform on this Contract on behalf of the titled owner of record.

☐ **Improvements on the Property include a manufactured/mobile home. (**A manufactured/mobile home may be considered personal property unless certain requirements have been met).

## PROPERTY, ADDENDA, DESCRIPTIONS AND CONDITIONS

**1. PROPERTY.** BUYER agrees to purchase and SELLER agrees to sell the real property and the improvements thereon **(the "Property")** commonly known as:

4905 Douglas ave, Kansas City, KS 66106 — Wyandotte

**Street Address** — **City** — **Zip** — **County**

**STATE:** ***(Check one)*** ☐ Missouri ☑ Kansas

**LEGAL DESCRIPTION.** (Legal description on SELLER'S vesting deed(s) to govern):

DOUGLAS WOODS, S25, T11, R24, ACRES 1.360000, L2

This Contract, including the Fixtures, Equipment and Appliances paragraph of the Seller's Disclosure and Condition of Property Addendum ("Seller's Disclosure"), not the MLS, or other promotional material, provides for what is included in the sale of the Property.

Items listed in the "Additional Inclusions" or "Exclusions" below supersede the Seller's Disclosure and the pre-printed list below. If there are no "Additional Inclusions" or "Exclusions" listed, the Seller's Disclosure and the pre-printed list below govern what is or is not included in the sale.

**IF THERE ARE DIFFERENCES BETWEEN THE SELLER'S DISCLOSURE AND THE PRE-PRINTED LIST BELOW, THE SELLER'S DISCLOSURE GOVERNS. Unless modified by the Seller's Disclosure and/or the "Additional Inclusions" and/or the "Exclusions", all existing improvements on the Property (if any) and appurtenances, fixtures and equipment (which SELLER agrees to own free and clear) whether buried, nailed, bolted, screwed, glued or otherwise permanently attached to the Property are expected to remain with Property, including, but not limited to:**

- Attached & all bathroom mirrors
- Fences (including pet systems)
- Fireplace grates, screens and/or glass doors
- Storm windows, doors, & screens
- Attached Lighting
- Closet systems
- Attached floor coverings
- Window blinds, curtains, & coverings (if not excluded)
- Attached shelves, racks, towel bars
- Mounted entertainment brackets
- Plumbing equipment and fixtures

SELLER [ ] SELLER [ ] Initials ***SELLER and BUYER acknowledge they have read this page*** Initials BUYER EG 01/22/19 BUYER WMG 01/22/19 dotloop verified

☐ **a. Additional Inclusions.** The following items, if any, supersede the Seller's Disclosure and the pre-printed list before; are considered to be part of the Property, and **are** included in the sale. ______

**b. Exclusions.** The following items, if any, supersede the Seller's Disclosure and the pre-printed list before; **are not** considered to be part of the Property, and **are not** included in the sale. ______

**c. Additional Terms and Conditions, if any.** ______

**d.** ☐ **Limited Home Warranty. (Check if applicable)**

1. ☐ SELLER ☐ BUYER, at a cost not to exceed $ ______, agrees to purchase a home warranty plan from ______ (vendor) to be paid at Closing. A home warranty plan is a limited service contract covering repair or replacement of the working components of the Property for a minimum of one (1) year from the Closing Date subject to the terms and conditions of the individual plan with a per claim deductible of $ ______.

2. The (Check one) ☐ Licensee assisting SELLER ☐ Licensee assisting BUYER will be responsible for making arrangements for the home warranty plan, submitting required documentation for such to the Closing Agent prior to the Closing Date. Broker may receive a fee from the warranty company.

**Home warranty plans may not cover pre-existing conditions and are not a substitute for inspections.**

**2. ADDENDA.** The following Addenda (riders, supplements, etc.) are attached hereto and are a part of this Contract *(Check applicable boxes):*

☐ **Seller's Disclosure and Condition of Property Add.**
☐ **Lead Based Paint Disclosure Addendum**
☐ **Contingency for Sale and/or Closing Add. (see FINANCIAL TERMS paragraph)**
☑ **Other:** KWOP disclosure
☑ **Other:** BK Global Addendum

☐ **Other:** ______
☐ **Other:** ______
☐ **Other:** ______
☐ **Other:** ______
☐ **Other:** ______
☐ **Other:** ______

dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

## 3. DESCRIPTIONS AND CONDITIONS.

**a. Effective Date.** The **Effective Date** will be the date of final acceptance by the last party to sign this **Contract** or a **Counter Offer Addendum**, the **Brokerage Relationship Disclosure Paragraph** of this Contract; the **Seller's Disclosure and Condition of Property Addendum** and, if applicable, a **Lead Based Paint Disclosure Addendum** for the Property.

**b. Seller's Disclosure Status.** SELLER confirms information contained in the Seller's Disclosure and Condition of Property Addendum is current as of the Effective Date of the Contract. SELLER understands that the law requires disclosure of any material defects, known to SELLER, in the Property to prospective Buyer(s) and that failure to do so may result in civil liability for damages.

**c. Entire Agreement and Manner of Modifications.** This Contract and all attachments constitute the complete agreement of the parties concerning the Property; supersede all previous agreements, and may be modified or assigned only by a written agreement signed by all parties.

**d. Parties.** This is a Contract between SELLER and BUYER. If SELLER or BUYER constitutes two or more persons, the terms "SELLER" or "BUYER" will be construed to read "SELLERS" or "BUYERS" whenever the sense of the Contract requires.

Unless identified as SELLER or BUYER, Listing Broker and any Cooperating Broker and their Agents (collectively referred to as "Broker") and any Escrow or Closing Agent are acting as Agents only and are not parties to this Contract.

SELLER and BUYER acknowledge Broker may have a financial interest in third parties providing specialized services required by this Contract including, but not limited to: Lender, title insurance company, Escrow Agent, Closing Agent, warranty company, wood infestation/mechanical/structural or other inspectors and repair personnel. SELLER and BUYER agree Broker will not be responsible for the conduct of third parties providing specialized services whether those services were arranged by SELLER, BUYER, or Broker on behalf of either.

☐ SELLER and/or BUYER is a licensed real estate broker or salesperson. *(Check applicable boxes)*
- ☐ SELLER licensed in: ☐ MO ☐ KS ☐ Other ______________________
- ☐ BUYER licensed in: ☐ MO ☐ KS ☐ Other ______________________

☐ Licensee assisting SELLER is an immediate family member of: *(check applicable boxes)*
- ☐ SELLER ☐ BUYER

☐ Licensee assisting BUYER is an immediate family member of: *(check applicable boxes)*
- ☐ SELLER ☐ BUYER

**e. Notices.** Any notice or other communication required or permitted hereunder may be delivered in person, by facsimile, United States Postal Service, courier service or email to the address set forth in this Contract or such other address or number as will be furnished in writing by any such party.

Such notice or communication will be deemed to have been given as of the date and time so delivered. Delivery to or receipt by the Licensee assisting BUYER will constitute receipt by BUYER and delivery to or receipt by the Licensee assisting SELLER will constitute receipt by SELLER.

**f. Time is of the essence**. Time is of the essence in the performance of the obligations of the parties under this Contract. With the exception of the terms "banking days" or "business days", as used herein, a "**day**" is defined as a 24-hour calendar day, seven (7) days per week.

**g. Electronic Transaction.** All parties agree this transaction may be conducted by electronic means, including email, according to the Uniform Electronic Transaction Act as adopted in Kansas and Missouri.

**h. Cyber Protection.** Because you are going to be involved in a real estate transaction where money is changing hands, you are a potential target for cyber-criminals. Always contact the closer directly before wiring any money.

[ ] [ ] Initials ***SELLER and BUYER acknowledge they have read this page*** Initials [EG 01/22/19 6:13 PM CST dotloop verified] [WMG 01/22/19 3:16 PM CST dotloop verified]
SELLER SELLER BUYER BUYER

Residential Real Estate Sale Contract
Page 3 of 16

dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

## PURCHASE PRICE, FINANCIAL TERMS AND CLOSING AND POSSESSION

**4. PURCHASE PRICE.** The Purchase Price for the Property is .......................................... $ 120,000
which BUYER agrees to pay as follows:

**a. Earnest Money** will be delivered to Listing Agent or Escrow Agent within 5 calendar days (two (2) if left blank) of the Effective Date and must comply with state laws as defined in the Earnest Money and Additional Deposits paragraph of this Contract.

**If not delivered as specified, SELLER may cancel this Contract by written notice, any time prior to delivery of the Earnest Money.**

**b. Earnest Money** in the form of: *(Check one)*
☐ Personal check OR ☑ Other wire transfer or certified check .............. $ 1,200 (b)

Deposited with: Brightline title

BUYER acknowledges that funds payable to and held by SELLER **WILL NOT** be held subject to the terms of the Earnest Money and Additional Deposits paragraph and may not be refundable.

**c. Additional Earnest Money** will be delivered on or before .............. $ 4,800 (c)
☐ Personal check OR ☑ Other wire transfer or certified check

Deposited with: Brightline Title

BUYER acknowledges that funds payable to and held by SELLER **WILL NOT** be held subject to the terms of the Earnest Money and Additional Deposits paragraph and may not be refundable.

**d. Total Amount Financed by BUYER** (Zero (0) if Cash Sale) ....................................$ 96,000 (d)
(not including financed mortgage insurance premiums, VA Funding Fee or other closing costs, if any)

**e. Balance of Purchase Price to be paid in CERTIFIED FUNDS**
Purchase Price (less b, c & d of this paragraph) on or before Closing Date. ............ $ 18,000 (e)
☐ Includes Lender(s) approved down payment assistance.

**f. Total Additional Seller Expenses (Each line ZERO ($0) if left blank):**

1. **Additional SELLER paid costs.** In addition to any other costs SELLER agreed to pay herein, SELLER agrees to pay other allowable closing costs permitted by Lender(s) and/or prepaid items for BUYER, not to exceed: ............$ 0

2. **Costs Not Payable by BUYER.** Some lending programs may prohibit a **BUYER** from paying certain closing-related costs. SELLER agrees to pay all costs associated with obtaining the **BUYER'S** loan(s) which the program rules will not permit the **BUYER** to pay, not to exceed:...................**$** 0

**TOTAL ADDITIONAL SELLER EXPENSES NOT TO EXCEED: .....................$** 0  

dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

**g. Other Financing Costs.**

1. **Loan Costs.** BUYER agrees to pay all customary costs necessary to obtain the Loan(s) (including but not limited to, origination fees, discounts or buy-downs) unless otherwise agreed.

2. **Private Mortgage Insurance (PMI).** BUYER will pay any up front PMI premium and annual renewal premiums or will finance the PMI as a part of the Loan(s), if required by Lender(s).

3. **FHA Mortgage Insurance (MIP).** BUYER will pay any up front MIP premium and annual renewal premiums or will finance MIP as a part of the Loan(s).

4. **VA Funding Fee** as required by Lender(s) will be paid at Closing by the BUYER or financed as part of the Loan(s).

5. **USDA Funding Fee** as required by Lender(s) will be paid at Closing by the BUYER or financed as part of the Loan(s).

6. **Flood Insurance.** BUYER agrees to pay for flood insurance if required by Lender(s). EG 01/22/19 6:12 PM CST dotloop verified WMG 01/22/19 6:16 PM CST dotloop verified

**5. CLOSING AND POSSESSION.** On or before 45 days from short sale approval (Closing Date), SELLER will execute and deliver into escrow with the title company(s) or other Closing Agent(s), a general warranty deed (or special warranty deed or fiduciary deed, if SELLER is a corporation, association, financial institution or fiduciary) and all other documents and funds necessary to satisfy SELLER'S obligations under this Contract.

On or before the Closing Date, BUYER will execute and deliver into escrow with the title company(s) or other Closing Agent(s), all documents (including note(s), mortgage(s)/deed(s) of trust, and any other documents required by BUYER'S Lender(s), if BUYER is obtaining financing) and funds (including Loan proceeds, if BUYER is obtaining financing) necessary to satisfy BUYER'S obligations under this Contract.

**SELLER and BUYER acknowledge all funds required for Closing must be in the form of cashier's check, wire transfer or other certified funds.**

When all documents and funds have been executed and delivered into escrow with the title company(s) or other Closing Agent(s), the Closing will be completed. SELLER will deliver possession of the Property to BUYER on at funding at ______ o'clock _____. m., (if left blank, **Possession** will be 5:00 P.M. on the **Closing Date**).

**BUYER must not occupy the Property or place personal property in or on it prior to completion of the Closing and disbursement or availability of SELLER'S proceeds,** <u>if any, unless otherwise agreed upon in writing by the BUYER and the SELLER.</u>

**6. APPRAISED VALUE CONTINGENCY.**

**If Financing is being obtained, the appraisal must be completed within the Loan Approval Period.**

**If a cash sale, BUYER** may within ________ calendar days from the Effective Date of this Contract (within the Inspection Period if left blank) obtain, at BUYER'S expense, an appraisal of the Property by an independent licensed appraiser.

**If the final appraised value of the Property**, as determined by BUYER'S Lender's appraiser **or** if a cash sale, BUYER'S appraiser, **is not equal to or greater than the Purchase Price, BUYER will notify SELLER in writing, within _______ calendar days (five (5) days if left blank), attaching a copy of the appraisal report, and the following may occur**:

dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

**BUYER and SELLER will have _____ calendar days (five (5) days if left blank) after SELLER'S receipt of BUYER'S appraisal report ("Appraisal Negotiation Period"), to reach an agreement resolving the appraisal value and/or purchase price.**

During this period, SELLER or BUYER may seek a reconsideration of value by the appraiser. If such reconsideration finds a value equal to or greater than the Purchase Price, or if BUYER and SELLER sign an Amendment resolving the difference between the appraised value and the Purchase Price, the transaction will move forward to Closing.

**If no resolution is reached prior to the expiration of the Appraisal Negotiation Period, then after the expiration of the Appraisal Negotiation period, either party may cancel this contract by written notice to the other and BUYER'S Earnest Money will be subject to the provisions of the Earnest Money and Additional Deposits paragraph of the Contract.**

**7. SALE CONTINGENCY.** *(Check applicable box)*

☑ This Contract is **NOT** contingent upon the sale and/or Closing of a BUYER'S Property.

☐ This Contract **IS** contingent upon the sale and/or Closing of a BUYER'S Property and a **Contingency For Sale and/or Closing of Buyer's Property Addendum is attached.**

**8. FINANCIAL TERMS.**

☐ **THIS IS A CASH SALE**. BUYER must provide written verification of funds within ____ calendar days (five (5) days if left blank), after the Effective Date, which are sufficient to complete the Closing on this Contract.

☑ **THIS IS A FINANCED SALE.** This Contract is contingent upon BUYER obtaining the financing described in this paragraph.

BUYER may obtain Loan(s) different from those described herein provided that the terms of the Loan(s) do not result in additional costs to SELLER, delay the Closing date, or change the Loan approval time frame. These changes must be agreed in writing, by both parties, within five (5) calendar days of BUYER'S knowledge and no later than _____ calendar days before Closing Date (fifteen (15) days if left blank). Any other changes must be communicated to SELLER in writing and include a pre-approval letter.

BUYER and SELLER are hereby informed any changes to the terms below after the Effective Date of the Contract have the potential to delay Closing and/or change costs due to federal regulations.

**a. Type of Financing.** Loan(s) will be ☐ owner-occupied Loan(s) or ☑ investment Loan(s).

**b. Loan Types/Terms.** BUYER will obtain a Loan(s) upon the following terms.

| **Type:** | Primary Loan | Secondary Loan |
|---|---|---|
| Conventional | ☑ | ☐ |
| FHA | ☐ | ☐ |
| VA | ☐ | ☐ |
| USDA | ☐ | ☐ |
| Other____________________ | ☐ | ☐ |
| **Interest Rate:** | | |
| Fixed Rate | ☑ | ☐ |
| Adjustable Rate | ☐ | ☐ |
| Interest Only | ☐ | ☐ |
| Other____________________ | ☐ | ☐ |
| **Amortization Period** | 30 years | ________ years |
| **Principal Amount or LTV** | 96,000 | ________ |

dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

All Loan amounts will include financed mortgage insurance premiums or VA funding fee, if any, according to the provisions described herein (the "Loan"). The Loan(s) will be secured by a mortgage/deed of trust on the Property or as otherwise required by Lender(s), and repayable in monthly installments.

**c. The Loan(s) will bear interest as follows:**

1. Primary Loan
   ☐ interest rate not exceeding ______% per annum or
   ☑ the prevailing rate at closing

2. Secondary Loan
   ☐ interest rate not exceeding ______% per annum or
   ☐ the prevailing rate at closing

BUYER has the option to "lock in" the foregoing interest rate or to "float" the interest rate.

If BUYER locks in a rate, BUYER agrees to accept the "locked" rate and terms even if different than those stated above. If BUYER floats the rate, BUYER agrees to accept the rate and terms available from BUYER'S Lender(s) for which BUYER qualifies at Closing.

**d. Loan Application(s).** BUYER agrees to authorize Lender(s) to perform all required services (credit report, appraisal, etc.), pay the fees required by Lender(s), and provide Lender(s) with all information requested no later than five (5) days after the Inspection Period ends.

☑ **BUYER IS PRE-APPROVED** (See attached Lender(s) letter(s).) BUYER has submitted information to Jim Siebold / First Mortgage Solutions (Lender(s)) who has checked BUYER'S credit and indicated BUYER can qualify for a Loan(s) in an amount equal to or greater than the Loan(s) contemplated in this Contract, subject to satisfactory appraisal of the Property and any other conditions set forth in the attached Lender(s) letter(s). The pre-approval must indicate the BUYER'S credit is acceptable to Lender(s) and indicate whether or not the pre-approval is subject to the sale and Closing of the BUYER'S current property.

☐ **BUYER IS NOT PRE-APPROVED.** Within ___________ calendar days (five (5) days if left blank) after the Effective Date of this Contract, BUYER will complete a written application.

**SELLER is aware that pre-approval is not a guarantee that BUYER will receive Lender(s) Loan approval(s).**

**e. Loan Approval(s).** BUYER agrees to make a good faith effort to obtain a commitment for the Loan(s) within __________ calendar days (forty-five (45) days if left blank) from the Effective Date of this Contract or within ________ calendar days (five (5) days if left blank) prior to the Closing Date, whichever is earlier (the "Loan Approval Period").

If BUYER is unable to obtain a commitment for the Loan(s) within the Loan Approval Period, SELLER may cancel this Contract by written notice.

Upon written evidence of rejection provided by BUYER'S Lender(s), BUYER or SELLER may cancel this Contract by written notice.

In either case, BUYER'S Earnest Money will be subject to the provisions of the Earnest Money and Additional Deposits paragraph of the Contract.

**f. Lender Appraisal Requirements.** In addition to any other costs or sums to be paid by SELLER pursuant to this Contract, SELLER agrees to pay an amount not to exceed $____________ (zero (0) if left blank) for requirements contained in the Lender's appraisal and a copy of Lenders appraisal requirements will be provided to SELLER. If any repairs are required, they will be performed in a workmanlike manner with good-quality materials.

dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

If appraisal and/or Lender(s) requirements exceed the amount in this blank and if SELLER and BUYER have not agreed in writing to a resolution of the excess appraisal and/or Lender(s) requirements prior to the Closing Date, or within the time period (no less than five (5) calendar days) specified in a written demand by either party, this Contract will be cancelled and disposition of BUYER'S Earnest Money will be subject to the provisions of the Earnest Money and Additional Deposits paragraph of the Contract.

## CONDITION, MAINTENANCE AND INSPECTIONS OF THE PROPERTY

**9. UTILITIES.** SELLER agrees to leave all utilities on until the date of possession unless otherwise agreed.

The BUYER will pay SELLER for the amount of fuel left in tank(s) at Closing based upon SELLER'S actual cost at time of purchase, if applicable. SELLER will have tank read no earlier than seven (7) calendar days and no later than five (5) calendar days prior to the Closing Date and provide documentation to BUYER.

**10. MAINTENANCE OF PROPERTY.** SELLER will maintain the Property in its present condition and agrees to perform ordinary and necessary maintenance, upkeep and repair to the Property through the Possession Date.

SELLER must advise BUYER in writing of any substantial change in the condition of the Property prior to Closing.

Unless otherwise agreed in writing, SELLER must remove all possessions, trash and debris, and clean the Property, upon vacating or prior to delivery of Possession.

**11. INSURANCE/CASUALTY LOSS.** SELLER agrees to keep the Property insured until delivery of SELLER'S deed to BUYER.

**BUYER and SELLER agree to consult with their respective insurance companies to ensure appropriate coverage during the time between completion of close and possession.**

If before delivery of the deed to BUYER, the Property is damaged or destroyed by fire or other causes including those that could be covered by what is known as fire and extended coverage insurance, then the SELLER must notify the BUYER in writing within one (1) calendar day of discovery of such damage. The parties agree that the risk of that damage or destruction will be borne as follows:

**a.** If the damage is minor, SELLER may repair or replace the damage done to the Property if the work can be completed before the Closing Date.

If the SELLER elects to repair or replace the damage done to the Property, but repair/replacement cannot be completed prior to the Closing, with written agreement between the parties one of the following options will be chosen:

1. SELLER will pay for repair/replacement after Closing; or
2. The parties will extend the Closing Date to such time as repairs/replacement can be completed; or
3. With consent of BUYER'S Lender(s), 1.5 times the estimated cost of repair/replacement will be escrowed until repair/replacement is complete with any funds remaining after payment for repairs/replacement being remitted to the party that funded the escrow.

**b.** If SELLER elects not to repair or replace the damage done to the Property, or if the damage is not minor, the BUYER may enforce or cancel this Contract by written notice to SELLER within ten (10) calendar days after receiving notice of such damage to the Property.

1. If BUYER elects to enforce this Contract, the Purchase Price will not be reduced and the Property will be conveyed in its existing condition at the time, provided SELLER must furnish BUYER with a copy of the insurance damage assessment and be responsible for paying the insurance deductible and assign SELLER'S fire and extended coverage proceeds to BUYER at Closing.
2. If BUYER and SELLER mutually agree upon the cost of repairs, then SELLER may pay the cost of those repairs.

dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

**12. SURVEY.** BUYER may, at BUYER'S expense, obtain a "Staked Survey" of the Property no later than _____ calendar days (ten (10) days if left blank) prior to the Closing Date to assure there are no defects, encroachments, overlaps, boundary line or acreage disputes, or other such matters that would be disclosed by a survey.

BUYER acknowledges a Mortgage Inspection Report or "Loan Survey" required by a lending institution is not a "Staked Survey". A title insurance company typically requires a "Staked Survey" in order to provide survey coverage to the BUYER.

Within five (5) calendar days of BUYER'S receipt of Survey, BUYER must notify SELLER of any encroachments of any improvements upon, from, or onto the Property or any building setback line, property line, or easement, which encroachment will be deemed to be a title defect. SELLER must remedy such defects as are susceptible of being remedied prior to the Closing Date. If SELLER does not remedy the defects in title, BUYER will have one of the following options:

**a.** Completing this purchase and accepting the title that SELLER is able to convey without adjustment in the Purchase Price; or

**b.** Cancelling this Contract by written notice. BUYER'S Earnest Money will be subject to the provisions of the Earnest Money and Additional Deposits paragraph of the Contract.

**13. INSPECTIONS.** BUYER may, within _____ calendar days (ten (10) days if left blank) (the "Inspection Period") after the Effective Date of this Contract, at BUYER'S expense, have property inspections by an **independent, qualified inspector(s)** which may include, but are not limited to:

appliances, plumbing (including septic system), electrical, heating system, central air conditioning, fireplace, chimney, foundation, roof, siding, windows, doors, ceilings, floors, insulation, drainage, interior and exterior components, any wall, decks, driveways, patios, sidewalks, fences, slabs, pest infestation, health and/or environmental concerns (including lead based paint, mold, asbestos and radon) as provided below and in the Additional Disclosures Including Those Mandated by State or Federal Law paragraph.

It is BUYER'S responsibility to perform due diligence and verify any information that BUYER considers to be material to the purchase of the Property. Any information provided by the Broker(s) and its affiliated licensee(s) assisting in this transaction is for information and marketing purposes only. BUYER shall complete all due diligence and verification of material concerns during the Inspection Period.

**a. Property Insurability.** During the Inspection Period, it is recommended BUYER determine if Property is insurable.

**b. Factors Affecting Inspections.** BUYER acknowledges such inspections may not identify deficiencies in inaccessible areas of the Property and may be limited by weather conditions at the time of the inspection. It is recommended BUYER check with Lender(s) and/or local government authority regarding septic inspection.

**c. Access to Property and Re-Inspections.** SELLER must provide BUYER reasonable access to the Property to conduct the inspections, re-inspections, inspection of any corrective measures completed by SELLER and/or final walk through prior to the Closing Date.

**d. Damages and Repairs.** BUYER will be responsible and pay for any damage to the Property resulting from the inspection(s).

**e. Quality of Repairs.** SELLER agrees any corrective measures which SELLER performs pursuant to the following provisions will be completed in a workmanlike manner with good-quality materials.

**f. Wood-Destroying Insects. SELLER AGREES TO PAY TO HAVE THE PROPERTY TREATED** for control of infestation by wood-destroying insects if a written inspection report of a certified pest inspector reveals evidence of active infestation, or evidence of past untreated infestation, or otherwise recommends treatment in the main dwelling unit, or included additional structures identified below or on the Property within thirty (30) feet of such unit or structure(s) (or as otherwise required by government regulations if BUYER is obtaining an FHA/VA or other government program Loan(s)). BUYER will pay for any inspections requested by BUYER and/or required by BUYER'S Lender(s).

SELLER SELLER Initials *SELLER and BUYER acknowledge they have read this page* Initials BUYER BUYER
EG 01/22/19 dotloop verified WMG 01/22/19 dotloop verified
Residential Real Estate Sale Contract
Page 9 of 16

dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

**The inspection report must be delivered WITHIN THE INSPECTION PERIOD, or any treatment will be at the BUYER'S expense.**

1. If treatment is required, SELLER will provide BUYER with a certificate evidencing treatment by a certified pest inspector of SELLER'S choice, which certificate BUYER agrees to accept. Treatment will be completed no earlier than ninety (90) calendar days prior to the Closing Date.

2. Additional structures to be included in the inspection are: ______

3. Any damage or repair issues related to wood-destroying insect infestations must be identified as Unacceptable Conditions and addressed as set forth below.

g. **What If Buyer Does Not Conduct Inspections?** If BUYER does not conduct inspections, BUYER will have waived any right to cancel or renegotiate this Contract pursuant to the inspection provisions.

h. **What is an Unacceptable Condition?** An Unacceptable Condition is any condition identified in a written inspection report prepared by an independent qualified inspector(s) of BUYER'S choice, which condition is unacceptable to BUYER and not otherwise excluded in this Contract.

i. **What If Buyer Does Not Give Timely Notice Of Unacceptable Conditions?** If BUYER conducts inspections but fails to notify SELLER of Unacceptable Conditions prior to the expiration of the Inspection Period, BUYER will have waived any right to cancel or renegotiate this Contract pursuant to these inspection provisions.

j. **What Is Not An Unacceptable Condition?** The following items will not be considered Unacceptable Conditions and cannot be used by BUYER as a reason to cancel or renegotiate this Contract. Any items marked Excluded (EX) on Seller's Disclosure and Condition of Property Addendum in addition to the following items will not be considered: ______

k. **What If Buyer's Inspections Reveal Unacceptable Conditions?** If BUYER'S inspections reveal Unacceptable Conditions, BUYER may do any one of the following:

1. **ACCEPT THE PROPERTY IN ITS PRESENT CONDITION.** BUYER may notify SELLER on the Inspection Notice that the inspections are satisfactory or do nothing. In either case, BUYER will have waived any right to cancel or renegotiate due to any Unacceptable Conditions; or

2. **CANCEL THIS CONTRACT** by notifying SELLER on the Inspection Notice within the Inspection Period; or

3. **OFFER TO RENEGOTIATE** with SELLER by notifying SELLER on the Resolution of Unacceptable Conditions within the Inspection Period.

l. **BUYER'S notice of cancellation or offer to renegotiate terminates the Inspection Period and must be accompanied by the applicable written inspection report(s) in their entirety from the independent, qualified inspector(s) who conducted the inspection(s).**

m. **Resolution of Unacceptable Conditions. BUYER and SELLER will have _____ calendar days (five (5) days if left blank) after SELLER'S receipt of BUYER'S Inspection Notice/Resolution of Unacceptable Conditions (the "Renegotiation Period"), to reach an agreement resolving the Unacceptable Conditions.**

[ ] [ ] Initials SELLER SELLER *SELLER and BUYER acknowledge they have read this page* Initials [EG 01/22/19 dotloop verified] [WMG 01/22/19 dotloop verified] BUYER BUYER

Residential Real Estate Sale Contract
Page 10 of 16

dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

Any of the following executed and delivered to the other party or other party's Agent prior to the expiration of the Renegotiation Period will constitute such an agreement:

1. SELLER'S signature agreeing to do everything requested by BUYER on the original Resolution of Unacceptable Conditions Amendment attached to Inspection Notice; or

2. A revised Resolution of Unacceptable Conditions Amendment signed by BUYER and SELLER resolving the unacceptable conditions; or

3. BUYER'S signature on the Resolution of Unacceptable Conditions Amendment accepting the Property in its present condition.

**If no agreement resolving the Unacceptable Conditions is reached during the Renegotiation Period as provided above, then after the expiration of the Renegotiation Period either of the following is permitted under the Contract.**

A. Negotiations may still proceed. Any agreement must be in a written Amendment and signed by both parties.

B. Either party may cancel this Contract by written notice to the other and the Earnest Money will be returned subject to the provisions of the Earnest Money and Additional Deposits paragraph of the Contract.

## DEFAULTS AND REMEDIES

**14. DEFAULTS AND REMEDIES.** SELLER or BUYER will be in default under this Contract if either fails to comply with any material covenant, agreement or obligation within any time limits required by this Contract. Following a default by either SELLER or BUYER under this Contract, the other party will have the following remedies, subject to the provisions of Earnest Money and Additional Deposits paragraph of this Contract.

**If SELLER defaults, BUYER may:**

**a.** Specifically enforce this Contract and recover damages suffered by BUYER as a result of the delay in the acquisition of the Property.

**b.** Terminate this Contract by written notice to SELLER and, at BUYER'S option, pursue any remedy and damages available by law or in equity. If BUYER elects to terminate this Contract, the Earnest Money will be returned to BUYER subject to the provisions of Earnest Money and Additional Deposits paragraph of this Contract.

**If BUYER defaults, SELLER may:**

**a.** Specifically enforce this Contract and recover damages suffered by SELLER as a result of the delay in the sale of the Property.

**b.** Terminate this Contract by written notice to BUYER and, at SELLER'S option, either retain the Earnest Money as liquidated damages as SELLER'S sole remedy (the parties recognizing that it would be extremely difficult to ascertain the extent of actual damages caused by BUYER'S breach, and that the Earnest Money represents as fair an approximation of such actual damages as the parties can now determine) as provided in this Contract, or pursue any other remedy and damages available at law or in equity.

In any legal action to enforce rights under this Contract, the prevailing party is entitled to reimbursement of all reasonable attorney fees, court costs, and other related legal expenses incurred in connection with such legal action.




dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

**15. DISPUTE RESOLUTION**. If a dispute arises relating to this Contract prior to or after closing between BUYER and SELLER, or between BUYER or SELLER and a Brokerage Firm or its licensee assisting in the transaction, and the parties to such dispute or claim are unable to resolve the dispute, BUYER and SELLER agree in good faith to attempt to settle such dispute through the dispute resolution process using a professional mediator. The parties to the dispute must agree in writing before any settlement is binding. Any agreement signed by the parties pursuant to the dispute resolution conference shall be binding. For controversies and claims that do not exceed the lesser of: (a) $5,000.00 (five thousand dollars); or (b) the applicable jurisdictional limit of small claims court, either party may bring such claims in small claims court in lieu of dispute resolution. The following matters are excluded from dispute resolution: foreclosure or other action to enforce a deed of trust, mortgage, or land contract; an unlawful detainer action; the filing or enforcement of a mechanic's lien; any matter, which is within the jurisdiction of a probate court, or; a violation of a state's real estate license laws. Each party agrees to pay their equal share of any cost to use the services of a professional mediator, unless otherwise agreed to by the parties.

**ADDITIONAL DISCLOSURES INCLUDING THOSE MANDATED BY STATE OR FEDERAL LAW**

**16. RADON, MICROBIALS AND OTHER ENVIRONMENTAL POLLUTANTS.**

**a. Radon.** Every BUYER of residential real property is notified the Property may present exposure to dangerous concentrations of indoor radon gas that may place occupants at risk of developing radon-induced lung cancer.

Radon, a Class-A human carcinogen, is the leading cause of lung cancer in non-smokers and the second leading cause overall. Kansas law requires SELLER to disclose any information known to SELLER that shows elevated concentrations of radon gas in residential real property.

The Kansas Department of Health and Environment recommends all homebuyers have an indoor radon test performed prior to purchasing or taking occupancy of residential real property. All testing for radon should be conducted by a radon measurement technician. Elevated radon concentrations can be easily reduced by a radon mitigation technician.

For additional information, please go to http://www.kansasradonprogram.org or in Missouri a national source for radon information is http://www.epa.gov/radon.

**b. Microbials and Other Environmental Pollutants**. BUYER acknowledges mold, fungi, bacteria and other microbials commonly exist in homes and will exist in the Property as a result of rain, humidity and other moisture in the Property and on materials during the normal construction process and as a result of the use of wood and other materials that commonly have mold, fungi, bacteria and other microbials at the time of delivery to the job site. BUYER has the opportunity to become informed about microbials and other environmental pollutants, and the potential health risks of microbials and other environmental pollutants.

1. The SELLER and Licensee assisting the SELLER and/or the BUYER do not claim or possess any special expertise in the measurement or reduction of radon, microbials or other environmental pollutants, nor have they provided any advice to BUYER as to acceptable levels or possible health hazards of radon, microbials or other environmental pollutants.

2. There can be no assurance that any existing systems, devices or methods incorporated into the Property for the purpose of reducing radon, microbials or other environmental pollutant levels will be effective and SELLER has no responsibility for the operation, maintenance or effectiveness of such systems, devices and methods.

**17. LEAD BASED PAINT DISCLOSURE.** If the property was built prior to 1978, BUYER acknowledges receiving, reading and signing the Federally required disclosure regarding lead based paint.

**18. CRIMINAL OFFENDERS.** In Missouri and Kansas, law requires persons who are convicted of certain crimes, including certain sexually violent crimes, to register with the Sheriff of the county in which they reside. If you, as the BUYER, desire information regarding those registrants, you may find information on the homepage of the Kansas Bureau of Investigation (KBI) at https://www.kbi.ks.gov/registeredoffender/SearchOffender.aspx or by contacting the local Sheriff's office in Kansas.

Initials
*SELLER and BUYER acknowledge they have read this page*
Initials
SELLER
SELLER
BUYER
BUYER
01/22/19
01/22/19
dotloop verified
dotloop verified

dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

In Missouri, you may find information on the homepage of the Missouri State Highway Patrol, at https://www.mshp.dps.missouri.gov/CJ38/search.jsp or BUYER should contact the Sheriff of the county in which the Property is located.

**19. FRANCHISE DISCLOSURE.** Although one or more of the Brokers may be a member of a franchise, the franchisor is not responsible for the acts of said Broker(s).

**20. BROKERAGE RELATIONSHIP DISCLOSURE.**

SELLER and BUYER acknowledge the Real Estate Brokerage Relationship Brochure has been furnished to them and the brokerage relationships were disclosed to them no later than the first showing, upon first contact, or immediately upon the occurrence of any change to that relationship.

SELLER and BUYER acknowledge the real estate Licensee(s) involved in this transaction may be acting as Agents of the SELLER, Agents of the BUYER, Transaction Broker(s) or Disclosed Dual Agents (Available only in Missouri.).

Licensee acting in the capacity of:

**a.** Agent for the SELLER has a duty to represent the SELLER'S interest and will not be the Agent of the BUYER. Information given by the BUYER to an Agent of the SELLER will be disclosed to the SELLER.
**b.** Agent for the BUYER has a duty to represent the BUYER'S interest and will not be an Agent of the SELLER. Information given by the SELLER to an Agent of the BUYER will be disclosed to the BUYER.
**c.** Transaction Broker is not an Agent for either party and does not advocate the interests of either party.
**d.** Disclosed Dual Agent (Available only in Missouri.) is acting as an Agent for both the SELLER and the BUYER, and a separate Disclosed Dual Agency Amendment is required.

**Agent generating the Contract is responsible for checking appropriate boxes on BOTH sides of Agency PRIOR TO THEIR CLIENT SIGNING.**

| **Licensee assisting SELLER is a:** *(Check appropriate box(es))* | **Licensee assisting BUYER is a:** *(Check appropriate box(es))* |
|---|---|
| ☐ SELLER'S Agent | ☐ BUYER'S Agent |
| ☑ Designated SELLER'S Agent (In Kansas, Supervising Broker acts as a Transaction Broker) | ☑ Designated BUYER'S Agent (In Kansas, Supervising Broker acts as a Transaction Broker) |
| ☐ Transaction Broker and SELLER agrees, if applicable, to sign a Transaction Broker Addendum. SELLER is not being represented. | ☐ Transaction Broker and BUYER agrees, if applicable, to sign a Transaction Broker Addendum. BUYER is not being represented. |
| ☐ Disclosed Dual Agent and SELLER agrees to sign a Disclosed Dual Agency Amendment. (Missouri only) | ☐ Disclosed Dual Agent and BUYER agrees to sign a Disclosed Dual Agency Amendment. (Missouri only) |
| ☐ BUYER'S Agent | ☐ SELLER'S Agent |
| ☐ Designated BUYER'S Agent (In Kansas, Supervising Broker acts as Transaction Broker) | ☐ Designated SELLER'S Agent (In Kansas, Supervising Broker acts as a Transaction Broker) |
| ☐ Subagent | ☐ Subagent |
| ☐ SELLER is not being represented. | ☐ BUYER is not being represented. |

**SOURCE OF COMPENSATION.** Brokerage fees, to include but not limited to broker commissions and other fees, will be paid out of escrow at Closing as follows, unless otherwise described in the terms of the respective agency agreements or other SELLER/BUYER agreements. **SELLER and BUYER understand and agree Brokers may be compensated by more than one party in the transaction.** (Check all applicable boxes)

**Brokers are compensated by: ☑ SELLER and/or ☐ BUYER**

**The signatures below only apply to the Brokerage Relationship Disclosure.**

| | |
|---|---|
| _______________ Licensee assisting Seller DATE | Jennifer Brentano (dotloop verified 01/22/19 3:45 PM CST GFJF-RYLI-GX6Z-DUOE) Licensee assisting Buyer DATE |
| _______________ **SELLER** **DATE** | Elvi Guerra (dotloop verified 01/22/19 6:12 PM CST W0VA-1SAF-GDVM-00DE) **BUYER** **DATE** |
| _______________ **SELLER** **DATE** | Wagner Mauricio Guerra-Arana (dotloop verified 01/22/19 6:16 PM CST C6AF-CJJM-S85C-MNMN) **BUYER** **DATE** |

Case 18-20838 Doc# 29-1 Filed 03/21/19 Page 13 of 16

dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

## TERMS AND CONDITIONS

**21. EARNEST MONEY AND ADDITIONAL DEPOSITS.**

**a. Delivery.** SELLER may cancel the Contract by written notice if Earnest Money and Additional Deposits are not received by Listing Broker or Escrow Agent as specified in this Contract.

**b. Deposit.** Earnest Money and Additional Deposits will be deposited into an insured account by the specified Listing Broker/Escrow Agent within five (5) business days (Kansas Property) or ten (10) banking days (Missouri Property) of the Effective Date, unless otherwise agreed upon in writing. All parties agree that Listing Broker/Escrow Agent will retain any interest earned on escrowed funds.

**c. Cancellation of Contract.** If this Contract is terminated by the express provisions of this Contract or by either party pursuant to a right expressly given in this Contract, the Earnest Money and Additional Deposits will be returned to BUYER, and neither party will have any further rights or obligations under this Contract, except as otherwise stated in this Contract.

Notwithstanding any other terms of this Contract providing for the forfeiture or refund of Earnest Money and Additional Deposits, the parties understand neither the Listing Broker nor the Escrow Agent can distribute the Earnest Money and Additional Deposits without the written consent of all parties to this Contract unless permitted to do so by applicable state laws.

If BUYER and SELLER are unable to agree in writing upon the disposition of the Earnest Money and Additional Deposits or any other funds, Listing Broker or Escrow Agent may commence an inter-pleader or similar proceeding and BUYER and SELLER authorize Listing Broker or Escrow Agent to pay all funds to the Clerk of the Court for disposition as the Court may direct.

BUYER and SELLER agree Listing Broker or Escrow Agent will be entitled to reimbursement of its costs incurred in connection with the inter-pleader or similar proceeding including without limitation, reasonable attorney fees and expenses.

BUYER and SELLER agree, in the absence of a dispute or written consent to distribution, the failure by either to respond in writing to a certified letter from Listing Broker or Escrow Agent within seven (7) calendar days (if Kansas Property)/fifteen (15) calendar days (if Missouri Property) of receipt thereof or failure to make written demand for return or forfeiture of the Earnest Money and Additional Deposits within thirty (30) calendar days (if Kansas Property)/sixty (60) calendar days (if Missouri Property) of notice of cancellation of this Contract will constitute consent to distribution of the Earnest Money and Additional Deposits as suggested in such certified letter.

All parties acknowledge any Earnest Deposit funds that remain in the Listing Broker or Escrow Agent's account for over one (1) year (if Missouri Property)/five (5) years (if Kansas Property) may be sent to the respective states as requested or required by law.

**22. TAXES, PRORATIONS AND SPECIAL ASSESSMENTS.** All general/state/county/school and municipal real estate taxes, homeowner's association dues and fees, special assessments, interest on existing Loans to be assumed by BUYER, and any other contractual obligations of SELLER to be assumed by BUYER for years prior to the current calendar year will be paid by SELLER.

**a.** Any of the preceding items which become due and accrue during the calendar year in which SELLER'S warranty deed is delivered (including but not limited to rents and deposits, if applicable) will be prorated between the parties as of the Closing Date and, for all years thereafter, to the extent permitted by applicable law, will be assumed and paid by the BUYER. BUYER acknowledges that the Property may be subject to a special assessment, fee, or located in an improvement district. BUYER acknowledges this disclosure is required by Kansas law, and may be found in the Seller's Disclosure and Condition of Property Addendum or a separate document, if applicable.





     dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

**b.** If the actual amount of any item, other than taxes for the current year, cannot be ascertained from the public record, the amount of the item for the preceding year will be used for the current year's amount. If the actual amount of taxes for the current calendar year cannot be determined, it will be estimated by using the current year's appraised value, if available from the county taxing authority, and last year's mill levy. If appraised value is not available, the Contract Purchase Price will be used with last year's mill levy. BUYER and SELLER agree to accept such prorations as final and release each other, Broker(s), Agent(s), and Closing Agent(s) from any liability for any increase or decrease in actual taxes due.

In Missouri, reassessment takes place in odd-numbered years. Missouri transactions closing in odd-numbered years are subject to the process in the preceding paragraph. Missouri transactions closing in even-numbered years will be prorated based upon the preceding year's tax amount.

**23. EVIDENCE OF TITLE.** SELLER agrees to provide and pay for an owner's title insurance policy in the amount of the Purchase Price insuring marketable fee simple title in BUYER, subject to the Permitted Exceptions and with the exception of any liens, encumbrances or other matters affecting title to the Property created by BUYER or arising by virtue of BUYER's activities or ownership.

Within a reasonable time after the Effective Date, but prior to the Closing Date (the "Commitment Delivery Date"), SELLER agrees, at SELLER's expense, to deliver to BUYER a title insurance commitment from a company authorized to insure titles in the state where the Property is located, setting forth its requirements to issue an owner's title policy and mortgage policy, if applicable.

Unless there is a defect in title to the Property that is not corrected prior to the Closing Date, BUYER may not object to untimely delivery of the title commitment. The title commitment will commit to insure marketable fee simple title in the BUYER upon the recording of the deed or other document of conveyance. Title to the Property will be subject to the conditions in this Contract and to customary covenants, declarations, restrictions, zoning laws, easements, party wall agreements, special assessments, and community contracts of record as of the date of recording the deed or other document of conveyance (the "Permitted Exceptions").

BUYER will have a reasonable time after receipt of the title commitment (the "Objection Period") to notify SELLER in writing of any valid objections to title to the Property. SELLER will then make a good faith effort to remedy the defects in title. If SELLER is not able to remedy the title defects before the Closing Date, BUYER may elect to waive the objections, extend the Closing Date a reasonable time for the SELLER to remedy the defects, or cancel this Contract by written notice.

If the time between the Effective Date and the Closing Date is short, both the Commitment Delivery Date and the Objection Period will be as soon as reasonably possible, but no later than the Closing Date.

**Mechanic's Lien Coverage.** The owner's title policy will also insure BUYER as of the date of recording of the deed or other document of conveyance, against any lien, or right to a lien for services, labor or material imposed by law and not shown by the public records. SELLER agrees to comply with the requirements of the title company for issuance of this coverage. Any mechanic's lien or notice of intent filed during construction and prior to closing will not be deemed a defect in title unless the title insurance company will not insure against loss therefrom.

If the Property (Missouri only) has not been occupied by SELLER and has had recent construction work performed, the SELLER may be required to post and record a "notice of intended sale", as stated in Chapter 429 of the Missouri Revised Statutes, in order for BUYER to obtain Mechanic's Lien Coverage. All parties are advised to consult with the title company regarding these requirements.

**24. EXPIRATION.** This offer will expire on ____________________________ (five (5) days if left blank), at ______ o'clock ___.m. (5:00 p.m. if left blank) unless accepted or withdrawn before expiration.

**CAREFULLY READ THE TERMS HEREOF BEFORE SIGNING. WHEN SIGNED BY ALL PARTIES, THIS DOCUMENT BECOMES PART OF A LEGALLY BINDING CONTRACT. IF NOT UNDERSTOOD, CONSULT AN ATTORNEY BEFORE SIGNING.**

SELLER | SELLER Initials ***SELLER and BUYER acknowledge they have read this page*** Initials BUYER EG 01/22/19 6:12 PM CST dotloop verified | BUYER WMG 01/22/19 6:16 PM CST dotloop verified

dotloop signature verification: dtlp.us/eGT7-Jvcv-AwPe

**SELLER hereby authorizes Closing Agent to obtain payoff information from SELLER'S Lender(s).**

**BUYER and SELLER hereby specifically permit the Brokerage(s) assisting in the transaction to obtain and retain copies of both BUYER'S and SELLER'S Closing Statements.**

☐ **Seller's signature not applicable below, see Counter Offer Addendum**

| | | | |
|---|---|---|---|
| | | Elvi Guerra (dotloop verified 01/22/19 6:12 PM CST KWCV-DJAB-LZX1-SRKJ) | |
| **SELLER** | **DATE** | **BUYER** | **DATE** |
| | | Wagner Mauricio Guerra-Arana (dotloop verified 01/22/19 6:16 PM CST WYRM-J6PJ-1MFW-7BWX) | |
| **SELLER** | **DATE** | **BUYER** | **DATE** |

| | |
|---|---|
| | Keller Williams - Overland Park |
| BROKERAGE | BROKERAGE |
| | 6850 College Blvd, Overland Park, KS 66211 |
| ADDRESS | ADDRESS |
| | Jennifer Brentano |
| Name of Licensee assisting Seller (Please Print) | Name of Licensee assisting Buyer (Please Print) |
| / | 9136346290 / 913-634-6290 |
| Listing Licensee's Contact # / Brokerage Contact # | Selling Licensee's Phone # / Brokerage Contact # |
| | jbrentano@kw.com |
| Listing Licensee's Email Address | Selling Licensee's Email Address |

**DATE OF FINAL ACCEPTANCE, THE "EFFECTIVE DATE" IS** ______________________________

(Effective Date to be completed by Licensee assisting the last party signing this Contract.)

**FORM CERTIFICATION.** ***(TO BE COMPLETED BY LICENSEE PREPARING THIS FORM)***

The undersigned Licensee assisted in completing the blanks in the foregoing form and confirms, to the best of his/her knowledge, that the printed form contains the language approved by Counsel for the Kansas City Regional Association of REALTORS®. The undersigned Licensee further confirms no additions or deletions to the approved language have been made, except such changes as may appear hereon made by hand or computer generation and signed and/or initialed by the party submitting this offer. Licensee's signature below is not an opinion as to the legal validity or meaning of any provisions contained in this form, but merely confirms, to the best of the Licensee's knowledge, no changes have been made to the approved form. **(Check one)**

| | |
|---|---|
| | Jennifer Brentano (dotloop verified 01/22/19 3:45 PM CST UVJV-0J66-UW8O-DEIU) |
| ☐ Licensee assisting Seller | ☑ Licensee assisting Buyer |

**CERTIFICATION OF REJECTION. (TO BE COMPLETED ONLY UPON SELLER'S REJECTION OF OFFER)**

Listing Licensee acknowledges receipt of this offer and has made a presentation to SELLER on ________ ________ for SELLER'S consideration.

DATE TIME

By: ______________________________

Licensee assisting Seller

Approved by Legal Counsel of the Kansas City Regional Association of REALTORS® for exclusive use by its REALTOR® members. No warranty is made or implied as to the legal validity or adequacy of this Contract, or that it complies in every respect with the law or that its use is appropriate for all situations. Local law, customs and practices, and differing circumstances in each transaction may dictate that amendments to this Contract be made. Last revised August 2018. All previous versions of this document may no longer be valid. Copyright January 2019.